## Williams v. Codell Construction Company.

(Decided March 2, 1934.)

MARCUS C. REDWINE for appellant.
JOUETT & METCALF for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Appellant, Mrs. Julia Williams, is the owner of a dwelling house located on the east side of Boone avenue in Winchester, Ky. In the year 1931, the city of Winchester contracted with Bishop-Robinson & Co. to extend its sanitary and storm sewer system. The contractor sublet to Codell Construction Company the construction of a tunnel under Boone avenue, extending south from a point near the intersection of College street and Boone avenue to Moundale avenue, a distance of more than 1,300 feet. A shaft was sunk 22 feet below the surface of the street at the northern terminus of the tunnel. From the bottom of the shaft the tunnel was driven under Boone avenue near the center of the street, and immediately in front of appellant's property it was 30 to 35 feet under the surface of the street. The face of the tunnel was $4\frac{1}{2}$ feet wide and from $5\frac{1}{2}$ to 6 feet in height. From twenty to twenty-eight holes were drilled in the face of the tunnel 6 feet deep, and about forty-two pounds of dynamite were placed in these holes and about 6 cubic yards of rock and earth were pulled by each explosion. The holes were drilled in rows of four; the rows being about 12 inches apart. The explosion of the dynamite was timed so that the dynamite in the row of holes near the bottom of the tunnel exploded first and that in the other rows exploded at intervals of one or two seconds.

Appellant brought this action against the appellee charging that in constructing the tunnel appellee negigently used an unnecessary amount of high-powered explosives in blasting under Boone avenue, and, by reason of the negligent manner in which the blasting

was done under the street, near and adjacent to plaintiff's residence, the vibration and concussion produced by such blasting damaged her residence by shaking the plastering from the walls and ceiling of a number of rooms, and that it would be necessary to expend $350 to restore her home to the condition it was in immediately before the injury. She further alleged that she had been damaged in the sum of $150 on account of the diminution in the value of the use and enjoyment of her property during the continuance of the construction work, and she prayed for a judgment against appellee for $500. On the trial of the case the jury returned a verdict for the defendant, and the plaintiff appeals.

The plaintiff testified that the building was in good condition before the blasting was done, and that during the time the tunnel was being constructed near her home the plastering on the walls and ceiling of a number of rooms was broken, and that the paper on the walls was broken and damaged, and that it would be necessary to repaper at least seven rooms. S. W. Templeman, who is engaged in the paint and wall paper business, visited appellant's home in November, 1931, after the work on the tunnel had been completed, examined the house and made an estimate of the cost of repairs. He estimated that it would cost $288.80 to restore the plastering and to repaper the rooms in which the paper had been broken and damaged. He was unable to say whether or not the cracks in the plastering and paper had been caused by the blasting. He testified that he had repapered the house for Mrs. Williams on several occasions, and on each occasion had found cracks in the plastering which he had repaired. L. C. Eubank was introduced as a witness by the plaintiff, and he testified that he had had several years' experience as a construction engineer for the Louisville & Nashville Railroad Company, and had done much blasting in tunnels. He stated that, if the holes in the face of the tunnel had not been drilled so deep and smaller amounts of dynamite had been used, the vibration would have been proportionately less. J. C. Codell, president of the Codell Construction Company, testified that the quantity of dynamite used was reasonably necessary and the work was done with reasonable care. A number of other witnesses, one of them, Samuel R. Russell, expert on explosives, testified that the blasting was done

according to the usual methods and with reasonable care under all the circumstances.

There is a conflict of authority as to whether one is liable, irrespective of negligence on his part, for damages to buildings belonging to others by blasting with powerful explosives and thus producing severe concussions or vibrations in surrounding earth and air. In this jurisdiction the rule has been adopted that, if one, in blasting upon his own lands or upon the lands of another with the owner's consent, invades the premises of his neighbor by throwing stones and debris thereon, he is liable for the resulting injury, but, for any injury resulting from the mere concussion of the atmosphere, sound or otherwise, there is no liability, unless it is shown that the work was done negligently and that the injury was the result of negligence and not the result of blasting according to the usual methods and with reasonable care. Hunt-Forbes Construction Co. v. Martt, 247 Ky. 376, 57 S. W. (2d) 37; Jefferson County v. Pohlman, 243 Ky. 556, 49 S. W. (2d) 344; Brooks-Calloway Co. v. Carroll, 235 Ky. 41, 29 S. W. (2d) 592; Gibson v. Womack, 218 Ky. 626, 291 S. W. 1021, 51 A. L. R. 773; Hieber v. Central Kentucky Traction Co., 145 Ky. 108, 140 S. W. 54, 36 L. R. A. (N. S.) 54.

The evidence for the appellee tended to show that the mode of blasting adopted was the only practicable one, and that the work was prosecuted with due care and without negligence. On the other hand, there was some evidence from which it might be inferred that excessive and unnecessary quantities of dynamite were used and that the damage to appellant's dwelling resulted from the negligent manner in which the work was conducted.

The chief ground relied upon by appellant for a reversal of the judgment is alleged errors in the instructions. In instruction No. 1 the court told the jury in substance that they should find for the plaintiff if they believed from the evidence that the defendant, while constructing the tunnel, used explosives in each blast in greater quantity than was reasonably necessary, taking into consideration all surrounding circumstances and conditions, and as a direct and proximate result of such use of explosives, if any, that plaintiff's house was caused to vibrate and the plastering and paper on the walls thereof to crack, and the value of the use and en-

joyment of her house used as a residence was diminished while the tunnel was being constructed. The chief criticism leveled at this instruction is that it required the jury to believe that defendant used a greater quantity of dynamite than was reasonably necessary in each and every blast. We do not think the instruction is susceptible of this construction, but, be that as it may, the undisputed proof shows that substantially the same number of holes were drilled in the face of the tunnel after each blast, and that they were drilled to the same depth and the same quantity of dynamite was used. That being true, the error in the instruction, if any, was not prejudicial. The question submitted to the jury was: Were the methods used by the defendant reasonable under the circumstances and were the quantities of explosives used such as were reasonably necessary? and this was proper. Brooks-Calloway Co. v. Carroll, supra.

The appellant also complains because the court did not permit the jury, in estimating the damage, to consider any damage to the bathroom. Mrs. Williams testified that the plastering in the bathroom was damaged, but she gave no estimate of the damage, and S. W. Templeman, when he examined the house and made his estimate as to the damages, did not examine the bathroom and made no estimate as to the damages to it. There was therefore nothing for the jury to consider in this respect, and the court properly excluded that item of damages. The instruction on the measure of damages was substantially similar to the instruction approved in Brooks-Calloway Co. v. Carroll, supra.

Appellant complains of numerous alleged errors in the introduction and rejection of testimony. It would unnecessarily extend this opinion to discuss each of these alleged errors, but it is sufficient to say that we have carefully examined the record and we find no ruling of the court permitting the introduction of testimony objected to by the plaintiff or rejecting testimony offered by her which was prejudicially erroneous. To many of the rulings of which complaint is made, no exception was reserved, and no ruling of the court to which an exception was saved and which was sufficiently prejudicial to authorize a reversal of the judgment has been pointed out. The record is unusually free of errors. The facts bearing on the crucial point in the case were in sharp dispute, and, the jury having returned a verdict on those facts under instructions not

prejudicially erroneous, its verdict should not be disturbed.

The judgment is affirmed.